POTTER (SKOLFIELD v.). See Case No. 12,925.

POTTER v. SLOAT. See Case No. 11,342.

---

## Case No. 11,338.

POTTER et al. v. STEVENS et al.

[2 Fish. Pat. Cas. 163.] [1]

Circuit Court, S. D. New York. Jan., 1861.

PROCEDURE AT PATENT OFFICE—EX PARTE APPLICATION AND ADJUDICATION—PRIMA FACIE CASE FOR INJUNCTION.

1. The application for a patent at the patent office is not a judicial proceeding; it may be

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

made a contested proceeding, but rarely is so. It is made upon ex parte application. and can only be treated as an ex parte adjudication.

2. Where the complainant makes a prima facie case for an injunction. the defendant must overcome it by testimony, or the injunction will issue.

In equity. This was a motion [by Orlando B. Potter and Nathaniel Wheeler] for an injunction to restrain the defendants [Henry L. Stevens and James H. Stevens] from infringing letters patent for "an improvement in sewing machines," granted to Allen B. Wilson, November 12, 1850 [No. 7,776], and more particularly referred to in the case of Potter v. Wilson [Case No. 11,342]. So much of the opinion of the court is given, as follows a statement of the substance of the bill.

George Gifford, for complainants.
A. K. Hadley, for defendants.

SMALLEY, District Judge. The answer makes substantially but one issue with the bill. It denies that the said Allen B. Wilson, in said bill of complaint named, ever was the original and first inventor of these improvements in sewing machines. On the contrary. the answer sets up that one Solomon B. Ellithorpe was the original and first inventor of said improvement; and that he, the said Ellithorpe, made a full and complete drawing and specification of said improvement in the summer of 1847.

Some affidavits have been filed which it is hardly necessary to refer to, and also certified copies of papers from the patent office at Washington, and also the opinion of the circuit judge.

The fact that whatever right Allen B. Wilson or his assignees had to this invention is now in these complainants, is admitted. It is set out in the bill, and not denied by the answer.

The answer, however, claims—and that is the real question now in controversy before the court—that Allen B. Wilson was not the original and first inventor of this sewing machine, the right to make. use, and vend which is said to be infringed by these defendants. The answer claims that Solomon B. Ellithorpe is the original and first inventor thereof; that as early as 1847 he invented this machine, this feed motion; that some time after that—the answer does not specify when—he applied to the patent office for a patent, and lodged his specifications and drawings in the patent office. The papers furnished to the court from the patent office show that in June, 1858, nearly eleven years after he claims to have made the invention, he made application to the patent office for a patent. The commissioner of patents refused it. From that Ellithorpe took an appeal to the circuit judge of the District of Columbia. The hearing was had before this judge, and he refused the patent. These papers are referred to, and relied upon by the counsel for the defendant, for the

purpose of showing that, in point of fact, the commissioner was satisfied that Ellithorpe was really the original inventor, and that the judge of the circuit court was equally well satisfied, but that they refused a patent because he did not follow it up—because he slept too long upon his rights, if he ever had any.

Another fact in the case should be stated, that under an act of congress application was made by bill to the circuit court in this district, to have an order issued to the commissioner of patents to grant to Ellithorpe a patent, and that subsequently a hearing was had upon the bill before Judges Nelson and Shipman, and that an order and a decree were made that the commissioner of patents at Washington should grant to Ellithorpe a patent.

It must be borne in mind that the bill sets out the several patents which were granted for these inventions, all the assignments in detail down to the present complaints—further. that a large amount of severely-contested litigation in relation to the right of the assignees of Wilson, as the first inventor, had been had in the state of Connecticut, and in the Southern district of New York, and adjudications sustaining their rights; that they had earnestly-contested suits in equity, and some at law in Connecticut, and others in equity here; and that after a very protracted litigation, a very large amount of testimony having been taken, the whole matter was finally heard before Justice Nelson and myself, in June last, and a final decree made,. sustaining the complainant's claims from beginning to end, and awarding a final decree against all infringers in those suits. This is not denied by the counsel for the respondents; and that of itself affords sufficient, abundantly sufficient, prima facie evidence for the court to grant the preliminary injunction asked for in this case, unless the evidence introduced upon the part of the respondents clearly overthrows these various adjudications in favor of the validity of these patents.

Then the inquiry returns: What is the evidence upon which the defense relies to overthrow this strong prima facie case? They rely, in the first place, upon the answer of the defendants. They say that in 1847 Ellithorpe invented these improvements. It seems from that and his affidavit, which accompanies the answer, that he slept upon it for a period of ten or eleven years before he made any application to the patent office for a patent; that he then applied to the patent office for a patent, and the commissioner declined to grant a patent. He then took an appeal to the judge of the district court, and the judge also declined it. Now, the defense insist that inasmuch as the commissioner, in giving the reasons why he declined, based his judicial action upon the ground that he, Ellithorpe, had slept too long; and that, inasmuch as the judge, in giving the reasons

why he refused to order the patent to be issued, assigned the same reason, there are two judgments in favor of Ellithorpe being the first and original inventor.

On the contrary, this court, can give no such construction to these proceedings. In the first place, the application for a patent at the patent office is not a judicial proceeding; it may be made a contested proceeding, but rarely is so. It is made upon ex parte application. The hearing probably rested—judicially we must suppose from the papers it rested solely—upon the affidavit of the applicant Ellithorpe. The only thing that appears in the proceedings at all is, that the officers, after having refused the patent, remarked that they were of the opinion that he, Ellithorpe, was the first inventor, but failed to so follow up the invention as to secure any rights. That certainly is not an adjudication of the point, and if an adjudication, it can only be treated as an ex-parte adjudication, and can have but very little weight in overcoming the earnest, contested litigations in different courts, between different parties, and in different states, which the bill sets up have been had by the complainants, wherein their rights have been fully sustained by the courts.

Another thing relied upon by the defendants to overcome this strong prima facie case, is the proceeding before Judges Nelson and Shipman, in this court, by which a decree and order were issued to the commissioner of patents, directing him to issue a patent to Ellithorpe on his specification and drawings in the patent office. That, it should be borne in mind, however (as it especially appears from the proceedings, and is so conceded by the arguments), was a mere ex parte hearing—no one appearing to contest it.

Again, in looking at that proceeding, this singular state of facts appears to have existed. It was first brought up before Judge Ingersoll, who, after a full examination, drew up and filed an elaborate and certainly able opinion upon the subject, denying the application and dismissing the bill. It is a little difficult to see, that bill having once been dismissed, and there being no application for a rehearing in the usual form, how the matter could come again before the court; and I was informed by Judge Shipman, when he was here, that he had just a few hours before ascertained the existence of this written opinion of Judge Ingersoll, and that, if he had known it, he was of the decided opinion that he should have regarded it as res judicata.

But laying the decision of Judge Ingersoll entirely out of the question, what effect has this ex parte hearing, based solely upon the affidavit of Ellithorpe? What effect ought that to have in overcoming the strong prima facie case of the complainants, arising from these various adjudications? There is nothing more, after all, than the affidavit of Ellithorpe, on which it was based; it is not pre-

tended that there was any other evidence introduced. The court evidently made a decree upon a bill taken pro confesso.

Therefore, the evidence relied upon in favor of Ellithorpe being the first and original inventor, in opposition to the various adjudications in favor of the complainants' right and title, seems to have been entirely based upon an ex parte application, and upon the affidavit of the alleged inventor himself, after having slept upon the matter some ten or eleven years, according to his own account.

Under such circumstances, I can have no doubt that the evidence is entirely insufficient to do away with the prima facie case made by the complainants; and, therefore, the complainants are entitled to an injunction. Many other questions have been made in the case, but I have thought it entirely unnecessary to consider them, as this disposes of the motion, and it disposes of both applications in like manner.

And the order for injunction in both of these cases will issue according to the prayer of the bill.

[For other cases involving this patent, see note to Potter v. Whitney, Case No. 11,341.]